IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDREW WAYNE ROARK, | § | |
| TDCJ-CID NO. 915478 | § | |
|       Petitioner, | § | |
| v. | § | Civil Action No. 3:06-CV-714-P (BH) |
| | § | "ECF" |
| NATHANIEL QUARTERMAN,[1] Director, | § | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|       Respondent. | § | |

**RESPONDENT QUARTERMAN'S ANSWER
WITH BRIEF IN SUPPORT**

Petitioner Andrew Wayne Roark ("Roark"), is challenging a state conviction for injury to a child, for which he was sentenced to thirty-five years in prison, through a petition for writ of habeas corpus under 28 U.S.C.A. § 2254 (West 2003). Jurisdiction is based on Roark's conviction in Dallas County, which is within the Northern District of Texas, Dallas Division. *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000) (quoting § 2241(d))(jurisdiction based on either the district where the person is in custody or the district in which the state court convicted and sentenced him). Further, the Director had custody of Roark pursuant to this conviction at the time he filed his federal petition for writ of habeas corpus. 28 U.S.C. § 2254; Fed. Writ Pet. at 1, 9; *see also Carafas v. Lavallee*, 391 U.S. 234, 238-40 (1968). However, some of Roark's claims are unexhausted and procedurally barred and all are without merit. Therefore, this petition should be denied.

---

[1] The previous named respondent in this action was Doug Dretke. Effective June 1, 2006, Nathaniel Quarterman succeeded Dretke as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Quarterman "is automatically substituted as a party."

## STATEMENT OF THE CASE

### 1.    Procedural History

The Director has lawful custody of Roark pursuant to judgment and sentence of the 5th Criminal District Court of Dallas County, Texas, in cause number F-9902290-KL, styled *The State of Texas vs. Andrew Wayne Roark*.  *Ex parte Roark*, Application No. 56,380-01, 2126041 at 151.[2] Roark pleaded not guilty to committing the first degree felony offense of injury to a child on July 16, 1997, as alleged in the indictment.  But a jury found him guilty and assessed punishment.  *Id.*  On March 14, 2000, the court sentenced him to thirty-five years incarceration.  *Id.*  The Court of Appeals for the Fifth District of Texas affirmed his conviction on October 5, 2001.  *Roark v. State*, No. 05-00-00584-CR, 2001 WL 1173916 (Tex. App. – Dallas, 2001) (unpublished).  The Court of Criminal Appeals refused his Petition for Discretionary Review ("PDR") on April 17, 2002.  *Roark v. State*, PD-2472-01 (Tex. Crim. App. 2002).

Roark filed a state writ application on April 11, 2003, which the Court of Criminal Appeals denied on January 25, 2006, without written order on the findings of the trial court after hearing.  *Ex parte Roark*, 2126041 at 2; 2223127 at cover.

Roark filed his federal petition for writ of habeas corpus on April 20, 2006.  Fed. Writ Pet. at 1 (File Stamp).

### 2.    Statement of the facts

The following statement of facts was taken from the court of appeals opinion:

On July 16, 1997, Marcus Jennings, a firefighter and paramedic with the City of De Soto Fire and Rescue, responded to a call at 1018 Grace Lane in De Soto, Texas. When Jennings and his partner arrived, appellant was standing at the front door of the house. Appellant was holding B.D., who he said was his one-year-old daughter. According to appellant, B.D. fell from a bed and had trouble waking up. Jennings carried B.D. to the truck and took her vital signs. Jennings described B.D. as

---

[2] Roark's state writ file consists of fifteen volumes.  In citing to Roark's state writ, the Director will reference the relevant volume as "*Ex parte Roark*, [ EventID listed on the cover page] at [page number, where one is available, or by best description]."

"unstable" with below normal blood pressure, a low pulse rate, and slightly constricted pupils. When he attempted to take her temperature, he discovered several bruises in her vaginal area. Jennings and his partner transported the child to the nearest hospital, Charlton Methodist Hospital, because they believed B.D. was in "danger of dying." B.D. was subsequently transferred to Children's Medical Center of Dallas ("Children's"). Later that evening, appellant was arrested and charged with injury to a child. After finding appellant guilty, the jury assessed punishment at thirty-five years and a $10,000 fine.

. . .

The evidence showed appellant was B.D.'s primary caretaker on July 16, 1997, while B.D.'s mother, Bridgette, was at work. That morning, appellant took B.D. to Dr. Padma Bala, the child's pediatrician, for her "wellness check" appointment. Dr. Bala testified she examined B.D. and gave her two injections. According to Dr. Bala, B.D. was a very friendly child who was healthy and neurologically intact. Dr. Bala testified she examined B.D. without her diaper and did not notice any bruising in her genital area that morning.

Jennings testified that when he responded to the 911 call, appellant was standing at the front door of the house, holding B.D. in his arms. Jennings carried B.D. to the truck, took her vitals, and described the child as "unstable." B.D. had "below normal" blood pressure, a low pulse rate, and slightly constricted pupils. When Jennings unfastened her diaper to take her temperature, he discovered several bruises in her vaginal area. Jennings decided to take B.D. to the nearest hospital because he believed she was in "danger of dying."

Dr. Kathleen Murphy, a pediatrician intensivist at Children's, testified she treated B.D. and was involved in the early stabilization, diagnosis, and treatment of her injuries. B.D. was in the intensive care unit ("ICU") for several days before being transferred to the pediatric ward thereafter. While in ICU, B.D. was placed on a ventilator to assist her breathing and was sedated. According to Dr. Murphy, B.D. had fresh bruising around her genital area, including the opening around the vaginal orifice and her inner thighs. These bruises appeared to be recent because of the red or purple coloring of the bruise. In contrast, she also had some older bruising (evidenced by the yellowish-brown color of the bruise) on her left jaw, mandible, and left ear. B.D. was given a CAT scan of her head. After examining B.D. and the CAT scan, Dr. Murphy opined that B.D. had a closed head injury, meaning she had an injury inside her cranial vault without a skull fracture. The injury was a subdural hemorrhage, which involves bleeding around the brain in the space between the brain and the cranium. The CAT scan showed the appearance of an older injury to the brain, indicated by darker, older blood. B.D. had swelling on the left side of brain,

3

which caused her brain to push over to the right side of her head. In addition, B.D. had a retinal hemorrhage in her left eye. Dr. Murphy testified:

You need quite a significant injury to cause that kind of swelling . . . Typically the kind of injury necessary-the kind of trauma necessary to cause this kind of injury is what we refer to as an acceleration/deceleration injury, so that the person is moving at a rapid speed and then is stopped abruptly, either by impact with something or just stopped abruptly. And if there's a rotational force in that as well, it causes more severe injury. So, that can cause tearing of the veins. So, you do not need like a skull fracture or outward injury to cause very significant head injury. . . . You can tell by CAT scan if you have significant cerebral edema, which she did have. She also had quite a bit of blood in this area of hemorrhage, and so in fact she had it drained for that reason. . . .

Dr. Murphy testified that, according to B.D.'s medical history, appellant took her to the pediatrician earlier that morning for an annual check-up and shots. The pediatrician said she was healthy. She spent the rest of the day at home with appellant while her mother was at work. During a bath, she apparently fell from a sitting position and hit her head on the side of the bathtub, but did not go under water or lose consciousness. She took a nap, and when appellant went to check on her later, he discovered she had fallen out of the crib. Appellant called 911 because B.D. did not awaken easily from her nap. However, Dr. Murphy testified that a backwards fall would not cause the type of head injury B.D. had. Rather, the type of force needed to cause an injury like B.D.'s would be comparable to a motor vehicle accident, a high-speed bicycle accident without a helmet, a fall from a two-story window, or a non-accidental trauma where the child is shaken or hit against a wall or some object. Although she did not know if the injury was accidental or non-accidental, she believed it was likely non-accidental.

Dr. Janet Squires, the director of general pediatrics at Children's, testified she is a specialist in the area of assessing child abuse. She was called to evaluate B.D. and give a diagnosis. When she first examined B.D., the child was heavily medicated, unconscious, and on a ventilator. B.D. had "very significant, unusual bruising" in her genital area that extended down the legs. B.D. had retinal hemorrhages or "big blobs of blood" visible in her retinas that Dr. Squires testified were very characteristic of trauma. Dr. Squires further testified:

> Therefore, I knew I had been told that this child was totally normal [July 16th] at noon time. She was alert and active. By 4:30 in the afternoon or 4:45 she is comatose, she is described . . . as apneic, that she's struggling to breathe, she's having irregular breath.
> So, I knew that she had gone from a normal child to a child with major neurological dysfunction and then x-ray findings of brain

4

injury. And it was-Then the x-rays are absolutely classic for shaken baby, and then there were retinal hemorrhages, which go along with it. And putting it all together it is a very classic case of Shaken Baby Syndrome.

Dr. Squires noted that B.D. did not have a skull fracture, which is most often seen when a child has been struck against an object. She noted, however, that an impact with a soft surface, like a mattress, would not leave a mark or fracture the skull. Dr. Squires described the kind of force required to cause these type of injuries as "very vigorous shaking ⋯ where the baby's head is just really flopping back and forth very hard . . . a very violent, vigorous force."

Nancy Rollins, a pediatric neuroradiologist at the University of Texas Southwestern Medical Center, testified she examined B.D.'s CAT scan. On the basis of the abnormalities, the radiologic findings of the brain swelling, the blood over the brain, the lack of a history of accidental trauma, and her own previous experience, Dr. Rollins opined that B.D. "had undergone non-accidental trauma, child abuse." She testified B.D.'s injuries were consistent with the type of violent injury known as Shaken Baby Syndrome.

*Roark v. State*, Slip op. at *1-4.

## PETITIONER'S ALLEGATIONS AND SUMMARY OF DIRECTOR'S RESPONSE

The Director denies each allegation of fact and legal contention made by Roark, except those supported by the record or specifically admitted herein. The Director understands Roark to allege the following grounds for federal habeas relief.

Ground One:   Roark received ineffective assistance of counsel at trial when counsel:

> A.   Failed to present evidence to raise lesser included offenses of reckless or negligent injury to a child or to request the lesser included offense;
>
> B.   Failed to present evidence that vaccinations can cause the symptoms displayed by the child;
>
> C.   Failed to present character witnesses at the punishment phase;
>
> D.   Inadequately cross-examined the State's witnesses;
>
> E.   Failed to use discovery obtained in the civil suit to cross-examine State's witnesses;

F.      Inadequately presented defense case;

G.     Inadequately advised Roark of the dangers of trial and advantages of plea negotiations;

H.     Inadequately investigated the case;

I.     Inadequately prepared Roark for his testimony;

J.     Was disorganized and unprepared for trial;

Ground Two: New Evidence and Newly Discovered Evidence shows that Roark is actually innocent (Ground two and four, Fed. Writ Pet. at 8, 11; Brief at 34-39);

Ground Three: There was no evidence or insufficient evidence to support the verdict:

A.     That Roark knowingly or intentionally caused serious bodily injury;

B.     That the nature and description of the alleged deadly weapon was unknown to the grand jurors;

C.     That Roark caused the injuries, and caused them as alleged;

D.     That the child was shaken as alleged in the first paragraph;

E.     That the child was struck with or against an object as alleged in the second paragraph.

## RULE 5 STATEMENT

(b)     The Director does not contend that this petition should be dismissed as a subsequent writ or as time-barred. The Director does contend Roark failed to present three of his five insufficiency of the evidence claims to the Court of Criminal Appeals as presented in his federal petition and that therefore those three claims are procedurally barred. This argument is provided in full in section I below. The Director also contends that Roark failed to present numerous articles to the Court of Criminal Appeals which he now attaches to his federal petition, including articles under Tab A numbers 5, 6, 8, 10, 14, 15, 17-20, and 22-30. This evidence is unexhausted.

(c)     Roark's state court records, including the clerk's record, the trial transcript, direct appeal documents, and state writ Application No. 56,380-01, are being sent to the Court under separate cover.

## ANSWER WITH BRIEF IN SUPPORT

**I.     Several of Roark's claims should be dismissed as unexhausted and procedurally defaulted.**

Roark failed to provide the state courts with a fair opportunity to address ground three subgrounds C-E as he presents them in his federal petition. However, the Court should not dismiss these claims as unexhausted, but rather dismiss them because federal review of these clams is barred by the federal procedural default doctrine. Further, Roark failed to present several exhibits to the state courts which he now provides as attachments to his federal petition. Such evidence should not be considered here.

State prisoners are required to exhaust all remedies available in state court before proceeding in federal court unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S. C. 2254(b). In order to properly exhaust, all of the prisoner's claims must have been "fairly presented" to the state court, such that the state court is informed of the same facts and legal theories upon which the prisoner bases his assertion s in his federal habeas petition. *Picard v. Connor*, 404 U.S. 270, 276-77 (1981). In order to satisfy the exhaustion requirement, a claim must be presented to the state's highest court for review, which in Texas is the Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). To proceed before that court, a petitioner must either file a PDR or an application for a post-conviction writ of habeas corpus. Tex. R. App. P. 68.1; Tex. Code Crim. Proc. Ann. Art. 11.07 (Vernon 1977 and Vernon Supp. 1998).

Roark failed to include his claims of insufficiency of the evidence regarding causation and methods of causation in his PDR. In his PDR, Roark did generally refer to the many insufficiency claims he raised on direct appeal, argued that the court of appeals failed to address all arguments

made by the appellant, and stated there was utter failure on proof of several of the alleged elements, but Roark specifically raised only his first two insufficiency claims. PDR at 2-6; 6-10. This is not sufficient to exhaust his claims. In *Brown*, the petitioner's claim that the evidence was not sufficient to show that he personally used or exhibited a firearm was subsumed in his claim on direct appeal that the evidence was insufficient because the State had only proven that he was near the scene of the robbery. *Brown v. Collins*, 937 F.2d 175, 179 (5th Cir. 1991). However, such a broad claim on direct appeal implicitly calls each element into question, whereas Roark specified two elements which he argued had not been sufficiently proven in his PDR. His unexhausted claims, related to the element of causation, should not be found to be subsumed in the claims he presented in his PDR regarding the element of mens rea and the nature of a deadly weapon used.

Further, it has long been the case in Texas that sufficiency of the evidence is not cognizable in a post-conviction writ of habeas corpus. *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (en banc); *Ex parte Ash*, 514 S.W.2d 762, 763 (Tex. Crim. App. 1974). The Fifth Circuit has recognized this state procedural bar. *See West v. Johnson*, 92 F.3d 1385, 1398, n.18 (5th Cir. 1996) ("Although the Court of Criminal Appeal's denial of habeas relief stated no reasons, that court, as we have held, has long held that the sufficiency of the evidence may only be raised on direct appeal, and may not be raised on state habeas."). Furthermore, the Texas Court of Criminal Appeals recently clarified in *Ex parte Grigsby* stating:

> In *Ex parte Torres*, addressing whether the applicant's subsequent petitions were barred under Article 11.07, Section 4, of the Texas Code of Criminal Procedure, we determined that "a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits." However, we also held that "[a] disposition is related to the merits if it decides the merits or makes a determination that the merits of the applicant's claims can never be decided." A challenge to the sufficiency of the evidence presents one of those instances where we can never consider the merits of the applicant's claim. Therefore, today, we reaffirm our holding that where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable.

*Ex parte Grigsby*, 2004 WL 1393811 (Tex. Crim. App. 2004) (original emphasis).

Though Roark included in his state writ a claim that "There was no evidence to support the verdict or insufficient evidence," he argued only that "there is no evidence or legally insufficient evidence that Applicant caused these injuries or that the injuries were caused as alleged in the indictment." *Ex parte Roark*, 2126041 at 8. Roark did not provide further briefing on the issue and did not present the state courts with the factual arguments on which he bases the same claims in his federal petition. He did not inform the Court of Criminal Appeals of the facts regarding insufficiency of the evidence of causation and method of causation and thus did not fairly present these claims to the court. Therefore, these claims are unexhausted. Furthermore, in light of *Grigsby*, when the Texas Court of Criminal Appeals denied Roark's state writ petition without written order, it clearly applied a procedural bar to Roark's insufficiency claims. *Ex parte Roark*, at cover.

Even were Roark able to bring insufficiency claims on collateral review, however, he failed to exhaust the factual basis for his claims C-E. Were Roark's unexhausted claims presented to the state courts in another state writ, providing the factual basis for the claim which is set forth in his federal petition, the claims would be procedurally barred as a subsequent application. Tex. Code Crim. Proc. Ann art. 11.07 § 4 (West Supp. 1996). The federal procedural default doctrine therefore precludes federal habeas review for that reason as well. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim, which would be barred by the Texas abuse-of-the writ doctrine if raised in a successive state habeas petition to be procedurally barred). The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to present the claim to the state court and the state court to which he would be required to present his supporting facts would now find them to be procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Moreover, for this Court to reach the merits of these claims, Roark "must establish 'cause' and 'prejudice' from [the state court's] failure to consider his claim[s]." *Fearance v. Scott*, 56 F.3d

642 (5th Cir. 1995). Roark has failed to argue, must less establish cause and prejudice and he has not shown that he is actually innocent of the crime for which he was convicted. *See* section V, below. Accordingly, this Court should find that Roark's insufficiency grounds C-E are barred under the federal procedural default doctrine. In the alternative, Roark's insufficiency claims C-E are without merit as argued in section III C, below.

Further, Roark failed to present several exhibits to the state courts which he now provides as attachments to his federal petition. The following articles do not appear within the state writ file: those attached to Roark's federal petition under Tab A, numbered 5, 6, 8, 10, 14, 15, 17, 18, 19, 20, 22, 23, 24-30. None of these articles are dated after the findings were entered by the state habeas court on April 22, 2005. *Id*. There is nothing indicating that Roark was unable to bring them to the state habeas court's attention. Therefore, they are unexhausted and should not be considered because the state habeas court has not yet had the opportunity to consider these supporting documents, Roark was able to present them to the state courts and merely failed to do so.

The Director reserves the right to raise additional exhaustion/procedural default arguments should Roark contend or this Court find that he raised more than the issues listed above, or should he amend his petition with claims, allegations, or evidence, other than as addressed herein.

## II.    Roark has failed to meet his burden of proof under Section 2254(d)(1) of the AEDPA.

First and most importantly, Roark has completely failed to meet the burden of proof required in order to obtain relief under the AEDPA. Roark's petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because the application was filed after the date of the act's passage. *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). The provisions of Section 2254(d) set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

A state prisoner seeking habeas corpus relief may not obtain relief on a claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2003).

A federal court may not grant relief if the court finds mere state court error, but only if it finds the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than that court has on a set of materially indistinguishable facts. *(Terry) Williams v. Taylor*, 529 U.S. 362, 413 (2000) (quoted in *Montoya v. Johnson,* 226 F.3d 399, 404 (5th Cir. 2000).

Absent a direct conflict between Supreme Court authority and the state-court decision, a federal habeas court may grant relief only if it determines that the state decision is factually or legally unreasonable. *Montoya v. Johnson,* 226 F.3d at 404. An application of federal law that is merely incorrect or erroneous differs from one that is unreasonable. *Williams v. Taylor,* 529 U.S. at 412. Under the "unreasonable application" clause, section 2254(d)(1), a federal habeas court may not issue the writ simply because the court concludes that in its independent judgment the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be objectively unreasonable. *Id.* at 411. An application is unreasonable if the state court identifies the correct governing legal principle from Supreme Court decisions but applies the principle to the facts of the prisoner's case unreasonably. *Williams v. Taylor,* 529 U.S. at 413.

In determining whether a state court decision involves an unreasonable application of federal law that will support a grant of federal habeas relief, a federal court reviews not the written opinion of the state court, but only the court decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The focus of the federal court should not be on whether the state court considered every angle of the evidence, but on the ultimate legal conclusion of the state court. *Id.*

Furthermore, when a federal court reviews a state prisoner's habeas petition, a "determination of a factual issue made by a State court shall be presumed to be correct," and the Appellant "shall have the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Jackson v. Johnson,* 150 F.3d 520, 524 (5th Cir. 1998). The presumption of correctness applies both to explicit and implicit findings. *Cantu v. Collins*, 967 F.2d 1006, 1015 (5th Cir. 1992); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (presumption of correctness applies to both explicit and implicit findings necessary to support a state court's conclusions of mixed law and fact). Roark contends that the state court's findings are entitled to considerably less deference than proscribed because they fail to discuss with any specificity any of the allegations raised in the application for writ of habeas corpus. Memo at 15. However, it is Roark's burden to present clear and convincing evidence to overcome the presumption of correctness necessarily applicable to both the state courts' explicit findings and the findings implicit therein.

The Texas Court of Criminal Appeals denied Roark relief for these allegations on the merits. *Roark v. State,* PD- 2472-01; *Ex parte Roark*, 2223127 at cover; *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than its merits). Therefore, under the AEDPA, Roark must show that this decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United State" or was "based on an unreasonable determination of the facts in light of the evidence . . ." 28 U.S.C. § 2254(d). Roark, however, has merely reasserted the same claims from his direct appeal and state habeas application without attempting to show that the denial was an unreasonable application of federal law as determined by the Supreme Court or based on an unreasonable determination of facts in light of the evidence. This is a mandatory predicate that cannot be ignored and must be satisfied in order to receive relief. As such, because Roark has failed to meet his burden of proof, this court must deny relief.

### III.    Roark has failed to demonstrate that the evidence was insufficient to support the conviction and his many claims of insufficiency must fail (Ground Three).

Roark claims there was no evidence or insufficient evidence to support the verdict. Fed. Writ Pet. at 9, Brief at 39-50. The "no evidence" claim is a product of state law and not applicable here. *See Ex parte Williams*, 703 S.W.2d 674, 679-80 (Tex. Crim. App. 1986). Roark contends there was insufficient evidence to prove the following elements: Roark knowingly or intentionally caused serious bodily injury; the nature and description of the alleged deadly weapon was unknown to the grand jurors; Roark caused the injuries; and the injuries were caused by shaking or striking the baby. Memo at 39-50. As argued in section I above, the last three insufficiency claims are unexhausted and procedurally barred. In the alternative, all of Roark's challenges to the legal sufficiency of evidence are without merit and must be denied.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court enunciated the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding. The court stated the issue to be "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* In applying the standard set forth in *Jackson*, supra, "all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319. The Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* All credibility choices and conflicts in inferences are to be resolved in favor of the verdict. *U.S. v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995); *U.S. v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994).

Further, the question on federal habeas corpus review, when a sufficiency of the evidence challenge is made to a presumptively valid state court conviction, is not whether the state courts complied with all "nuances" of state law or if the state courts failed to enforce a purely state rule; rather, the question is whether the evidence is constitutionally sufficient to support the conviction.

*Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991) (no parallel rule of constitutional law which demands exactitude with respect to the conformance of the evidence to the indictment and jury charge). This simply means that the evidence need merely satisfy the "'substantive elements of the criminal offense as defined by state law.'" *Id.* (quoting *Jackson*, 443 U.S. at 324 n. 16). Finally, a federal habeas court is required to give great deference to a state court's determination of the sufficiency of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993); *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985).

On direct appeal Roark claimed that the evidence was legally insufficient to support his conviction. Appellant's Brief at 19-29. Before affirming his conviction, the Fifth Court of Appeals of Texas, discussed the evidence before the jury as follows:

> A person commits the offense of injury to a child if, by act or omission, he intentionally or knowingly causes serious bodily injury to a child fourteen years of age or younger. Tex. Pen.Code Ann. § 22.04(a)(1) (Vernon Supp.2001). Injury to a child is a result-oriented or "result of conduct" crime. That is, the culpable mental state relates not to the nature of or circumstances surrounding the charged conduct, but to the result of the defendant's conduct. *Haggins v. State*, 785 S.W.2d 827, 828 (Tex . Crim.App.1990); *Alvarado v. State*, 704 S.W.2d 36, 38-39 (Tex.Crim.App.1985). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Pen.Code Ann. § 6.03(a) (Vernon 1994). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. Tex. Pen.Code Ann. § 6.03(b) (Vernon 1994).
>
> . . .
>
> Viewed in the light most favorable to the judgment, the evidence shows B.D. was healthy when she visited Dr. Bala for her wellness examination on the morning of July 16, 1997. Appellant was B.D.'s sole caretaker from the time he and B.D. left the pediatrician's office that morning until the paramedics arrived at the house later that day. When she was admitted to the emergency room, B.D.'s vital signs were unstable and she had fresh bruising on her thighs and vaginal area. Dr. Murphy testified B.D. had a closed head injury with a subdural hemorrhage. She classified the extent of the injury as "significant" and had a suspicion that it was not accidental. Dr. Murphy testified the history of events given to her-that B.D. fell in the bathtub and later out of her crib-was not consistent with her injuries. Dr. Squires testified B.D. could have been shaken, as well as suffering an injury from an impact with an object, although

14

there was no evidence of a skull fracture. After examining the CAT scans and skeletal x-rays, Dr. Squires determined B.D. had "a very significant brain injury ⋯ a life threatening injury to the brain," which she diagnosed as Shaken Baby Syndrome. According to Dr. Squires, B.D. was in danger of dying that day from her injuries and had a substantial risk of future loss or impairment of body member or organs. Dr. Rollins similarly testified that, in her opinion, B.D. had suffered non-accidental trauma consistent with Shaken Baby Syndrome. From these facts, we conclude a rational jury could infer appellant knowingly or intentionally caused serious bodily injury by shaking B .D. After viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support appellant's conviction for injury to a child.

To the extent appellant argues the State failed to prove "the nature and description of the alleged deadly weapon was unknown to the grand jurors," we disagree. If an indictment alleges the manner or means of inflicting the injury is unknown and the evidence at trial does not establish the type of weapon or object used, a prima facie showing is made that the weapon was unknown to the grand jury. *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App.1999) (citing *Hicks v. State*, 860 S.W.2d 419, 424 (Tex.Crim.App.1993)); *Matson v. State*, 819 S.W.2d 839, 847 (Tex.Crim.App.1991). When the evidence at trial shows what object was used to inflict the injury, the State must then prove the grand jury used due diligence in attempting to ascertain the weapon used. *Rosales*, 4 S.W.3d at 231; *Matson*, 819 S.W.2d at 847. The State may prove due diligence through the testimony of a grand juror. *Rosales*, 4 S.W.3d at 231.

Although appellant claims the State failed to establish the grand jury used due diligence to determine the object used to inflict B.D.'s injuries, we cannot agree. During trial, Clarence Ford, a member of the grand jury that indicted appellant, testified. According to Ford, the grand jury used diligence to "determine the exact nature of the object that was used in the commission of the offense," exhausted the "investigative leads to determine the exact nature and description of the object that caused [B.D.'s] injuries," and could not have done any other investigation to determine the exact nature of the weapon. Ford's testimony was sufficient to establish the grand jury exercised due diligence to determine the object used in this case and to justify the "unknown" allegation in the indictment. *Rosales*, 4 S.W.3d at 231; *Wheeler v. State*, 35 S.W.3d 126, 133 (Tex.App.-Texarkana 2000, pet. ref'd). We overrule appellant's first issue.

*Roark v. State*, slip op. at 3-4, 7-9.

Because the state appellate court applied *Jackson* when it reviewed Roark's sufficiency of the evidence claim, it was not in conflict with clearly established federal law. Moreover, Roark has failed to provide any evidence to overcome the factual determinations made by the state courts. *See*

28 U.S.C. § 2254(e)(1).  Roark's claim that the evidence is legally insufficient to sustain his conviction amounts to nothing more than a disagreement with the fact-finder's resolution of conflicts in the evidence.  Therefore, it is foreclosed by settled principles of appellate review.  *See Nguyen*, 28 F.2d at 480 ("[a]ll credibility determinations and reasonable inferences are to be resolved in favor of the jury's verdict.");  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1989) ("we should not substitute our view of the evidence for that of the fact-finder");  *Cobb v. Wainwright*, 666 F.2d 966, 971 (5th Cir. 1982) ("the jury has the sole responsibility to judge the weight and credibility of the evidence").

Roark argues that under *Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985), if the evidence, when viewed in the light most favorable to the verdict, gives equal or nearly equal support to theories of innocence and guilt, the evidence is insufficient.  Memo at 40.  However, if evidence of guilt was proven or can be inferred, the jury's verdict must be affirmed.  *Id.* at 396.  Here, the evidence is sufficient to infer guilt.  Further, this does not mean that whenever the evidence supports a reasonable inference consistent with innocence the jury must acquit; the Supreme Court and the Fifth Circuit have rejected the "theory that the prosecution (must) rule out every hypothesis except that of guilt." *Jackson*, 443 U.S. at 326; *U. S. v. Bell*, 678 F.2d 547, 550 (5th Cir. 1982).

Moreover, the court of appeals found that the evidence was legally sufficient to find beyond a reasonable doubt Roark caused the injuries by shaking, he did so knowingly or intentionally; and the nature and description of the alleged deadly weapon was unknown to the grand jurors.  *Roark v. State*, Slip Op. at 8.  The court of appeals also found the evidence to be factually sufficient, such that the verdict was not so against the great weight of the evidence as to be clearly wrong and unjust.  *Id.* at 9.  The Court of Criminal Appeals refused Roark's PDR.  Roark has failed to demonstrate that the state courts' determinations were contrary to or an unreasonable application of clearly established federal law as announced by the Supreme Court or an unreasonable determination of the facts based on the evidence in the record.  Thus, relief should be denied.  With respect to each of Roark's individual claims, the Director offers the additional responses below.

16

**A.    The evidence is sufficient to establish the required mens rea; therefore this claim should be denied.**

Roark claims the evidence was insufficient for the jury to find beyond a reasonable doubt that he knowingly or intentionally caused serious bodily injury.  Memo 41-42.  He contends there is no evidence that he intended to cause serious bodily injury, while there was evidence he was affectionate and responsible towards the child, and the average person would not know shaking a baby could cause serious bodily injuries, and no evidence Roark is other than average.  Memo 42.

While there may be no direct evidence of Roark's intent, proof of a culpable mental state almost always relies upon circumstantial evidence.  *Robles v. State*, 664 S.W.2d 91, 95 (Tex.Crim.App. 1984).  A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, the method of committing the crime, and from the nature of wounds inflicted on the victims.  *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991).  Further, while there may not have been direct evidence that Roark knew that shaking a baby could cause serious bodily injuries, "juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *United States v. Heath*, 970 F.2d 1397, 1402 (5th Cir.1992).  The responsibility of the trier of fact is to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Jackson v. Virginia*, 443 U.S. at 319; *see also Hawk v. Olson*, 326 U.S. 271, 279 (1945) (a determination of credibility of testimony is for the trier of facts, who is not bound to accept testimony even if uncontradicted).  Therefore, the jury was free to disbelieve testimony, including testimony that the average person would not know that shaking a baby could cause serious bodily injuries, or to disbelieve that such evidence applied to Roark regarding the injuries caused by his shaking.

The jury's conclusion that Roark intentionally or knowingly caused the injuries is supported inferentially by the evidence.  Dr. Squires testified that she saw a great deal of evidence of shaken

17

baby syndrome and that Brook may have been both shaken and suffered from an impact injury to the head. 5 SF 68-73, 113. The jury heard that the injury in this case was severe in the spectrum of shaken-baby syndrome injuries. 5 SF 97, 99. The jury heard that the type of force required to cause such injuries is very violent, vigorous force. 5 SF 73. The jury was aware of the bruising in the genital and thigh area. 5 SF 110, 132. The jury also heard what information Roark had provided as possible explanations for the injuries and may have inferred that he was lying or omitting information and that his unwillingness to provide an explanation was due to his knowledge that he had done something he knew was likely to result in severe injury. 5 SF 216-220. Roark's argument that the evidence is insufficient on the element of *mens rea* is essentially a disagreement with the jury's credibility determinations and inferences drawn from the evidence.

Moreover, the court of appeals found that the evidence was sufficient for a rational jury to infer that Roark knowingly or intentionally caused serious bodily injury by shaking the baby. *Roark v. State*, Slip Op. at 8. The Court of Criminal Appeals refused his PDR. Roark has not demonstrated that the state courts' determination was contrary to or an unreasonable application of clearly established federal law as announced by the Supreme Court or an unreasonable determination of the facts based on the evidence in the record. Therefore, this claim must fail.

> **B.    The evidence was sufficient to establish that the nature and description of the alleged deadly weapon was unknown to the grand jurors, and this claim should be denied.**

Roark claims that when alleging that some material factor was unknown to the grand jury, the state must prove that after efforts to do so the grand jury was unable to find out the information; He claims the evidence was insufficient to support a finding that the grand jury exercised due diligence. Memo 43. He contends all of the evidence shows the police and prosecutors knew if Roark caused the injury at all, he only used his hands and potentially the additional use of a piece of household furniture. Memo 43. Although he concedes that the State provided the testimony of Grand Juror Clarence Ford that the jury did exercise due diligence, Roark argues that Ford's testimony was conclusory and cross-examination revealed that due diligence was not used. Memo 45. But Roark's

claim of insufficiency relies on state law requirements and not federal law, therefore it is not cognizable on federal habeas review as a basis for insufficiency of the evidence and should be denied. *See Ellis v. Lynaugh,* 873 F.2d 830, 838  (5thCir 1989)(suggesting claim of failure to prove jury did not know manner and means does not raise and federal question); *Brown v. Collins*, 937 F.2d at 181; Memo at 43-46 (citing only state law).

However, Roark's claim lacks merit under Texas law as well.  In the absence of direct evidence, where the nature of the object can only be arrived at by circumstantial evidence, then an "unknown object" averment may be employed; the grand jury is not required to speculatively plead an instrument which the State would find virtually impossible to prove beyond a reasonable doubt.  *See Simon v. State*, 488 S.W.2d 439 (Tex.Crim.App.1972); *Heras v. State*, 786 S.W.2d 72, 73 (El Paso, 1990).  There was no direct evidence that Roark shook the baby with his hands, therefore, the jury was not required to speculatively plead that Roark did shake the baby with his hands.

Furthermore, the court of appeals found that the evidence was sufficient to establish that the grand jury exercised due diligence in attempting to ascertain the weapon used.  *Roark v. State*, Slip op. at 8-9.  The Court of Criminal Appeals denied PDR on this issue.  Roark has not demonstrated that this determination was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts based on the evidence in the record.  This claim is not cognizable and is utterly without merit and should be denied.

C.     **The evidence was sufficient to establish Roark caused the injuries.**

Roark claims that the evidence was legally insufficient to support a jury's finding that he caused Brook's injuries, or caused them as alleged, beyond a reasonable doubt.  Memo 46-47.  As argued in section I, above, Roark failed to exhaust this claim and it should be dismissed as procedurally defaulted.  In the alternative, this claim lacks merit and should be denied.

Roark argues that the State's theory that Roark was the only person with access to the child during the injury breaks down with the presence of the old blood which could have occurred weeks earlier when many others were around; and the injury itself could have been caused by the old blood

19

spontaneously rebleeding or a new blood spontaneously bleeding, by a minor trauma like falling off the bed or hitting her head in the bathtub, or by a major trauma. Memo 46-47. Essentially Roark's argument is that because there was evidence supporting a reasonable inference consistent with innocence, the evidence was legally insufficient. But as stated above, the prosecution need not rule out every hypothesis except that of guilt for the evidence to be legally sufficient. *See Jackson*, 443 U.S. at 326; *U. S. v. Bell*, 678 F.2d at 550.

The only testimony Roark cites is of Dr. Allen Marengo-Rowe and Dr. Robert Bux, two doctors who had not examined the child and could not rule out that the injuries were caused by major trauma. Memo at 47; 7 SF 84. Dr. Marengo-Rowe testified that overreaction to a blood clot itself could cause a rebleed, that minor trauma could cause a rebleed, and that major trauma could cause a rebleed. 7 SF 64. He also testified that there was no evidence of the child having clotting problems. 7 SF 89-90. Dr. Bux also testified that he could not say for certain whether the rebleed was a result of no trauma at all, some trauma, some minor insignificant trauma or a major violent trauma. 7 SF 189. He also testified that while he disagreed that Brook had sustained diffuse axonal injury, that the trauma could have resulted from a non-accidental trauma by a shaking of the child which impacted some sort of surface causing the second bleed resulting in cerebral edema which could in fact cause serious bodily injury to Brook. 7 SF 190-192. Dr. Bux also placed the timing of the injury at between 48 to 72 hours, because he did not believe that there was diffuse axonal injury. 7 SF 193.

However, in addition to the testimony above, there was also testimony from Dr. Squires that although there was old blood indicating an older injury, there was not any way, in Brook's case, that the old blood could have created the new blood without an injury or trauma occurring because the brain swelling and blood were all over. 5 SF 98-99. There was evidence that the injuries could not be the result of Brook's own actions. 5 SF 110. The testimony of all the examining doctors was that injuries were imposed upon her sometime during the day of the emergency treatment. 4 SF 164-67; 5 SF 190. Dr. Parma Bala, Brook's pediatrician, testified she had seen Brook for a check-up on the

20

same day of the episode and that she seemed fine and that she did not see any bruising in her diaper or genital area.  5 SF 117-123.  When Jennings responded to the 911 call and unfastened Brook's diaper to take her temperature, he discovered several bruises in her genital area.  4 SF 48.  Dr. Murphy testified that Brook's bruising in her genital area and her inner thighs appeared to be recent due to their red or purple coloring.  4 SF 132.  Dr. Murphy testified significant injury was required to cause the kind of swelling in Brook's brain and that Roark's explanation that she had fallen in the bathtub or out of her bed did not explain her injuries.  4 SF 138.  Dr. Squires described the kind of force required to cause Brook's type of injuries as very violent, vigorous shaking.  5 SF 73.  Dr. Squires testified that Brook's brain injury could have been caused by striking her head against an object at a rapid speed.  4 SF 164-67.  Dr. Rollins testified that in her opinion, Brook suffered non-accidental trauma consistent with Shaken Baby Syndrome.  5 SF 202.

In the light most favorable to the verdict, the evidence shows testimony of three doctors that the injury was caused by severe trauma consistent with Shaken Baby Syndrome, accompanied by bruising which had appeared sometime after Brook's visit to her pediatrician earlier in the day while she was in the sole care of Roark who failed to provide any explanation for the bruising or the injury and did not appear upset or concerned when the medics arrived at the house.  4 SF 60.  While there may have been  evidence supporting a reasonable inference consistent with innocence, the jury resolves conflicts in the evidence, and viewing it in the light most favorable to the verdict, the evidence was legally sufficient for the jury to find beyond a reasonable doubt that Roark caused Brook's injuries.  *See Jackson*, 443 U.S. at 326; *U. S. v. Bell*, 678 F.2d at 550.

Moreover,  the court of appeals found that the evidence was sufficient to establish that Roark caused Brook's injuries.  *Roark v. State*, Slip op. at 8-9.  To the extent, if any, that this Court finds Roark exhausted this claim in his PDR or in his state habeas application, the Court of Criminal Appeals denied such claim.  Roark has not overcome with clear and convincing evidence the presumption of correctness to which the findings of the state courts are entitled.  Nor has Roark demonstrated that the state courts' determination was contrary to or an unreasonable application of

clearly established federal law or an unreasonable determination of the facts based on the evidence in the record. This claim is utterly without merit and should be denied.

### D. The evidence was sufficient to determine the child was shaken as alleged in the first paragraph.

Roark claims that the State failed to prove beyond a reasonable doubt that Roark caused the injuries to Brook by shaking her, as alleged in the first paragraph of the indictment. Memo at 47-48. As argued in section I, above, Roark failed to exhaust this claim and it should be dismissed as procedurally defaulted. In the alternative, this claim fails to present a federal issue for review or lacks merit and should be denied.

Roark contends that the State's claim that the injuries were caused by shaking rested on the testimony that shaking a baby causes Diffuse Axonal Injury, and the experts' opinions that the child had suffered this injury and therefore had been violently shaken. Memo at 48. Roark argues that other experts for both the State and defense said the child did not have Diffuse Axonal Injury. *Id*. Roark claims there is insufficient evidence that the child suffered Diffuse Axonal Injury. Memo 48. Roark's argument is based on his contention that under state law, the State must prove the manner and means of causing the injury as alleged in the indictment even if such allegation is unnecessary surplussage. Memo 49-50. But such claim does not present a federal issue. *Brown v. Collins*, 937 F.2d 181 (on federal review of sufficiency of the evidence, courts look to the substantive elements of the criminal offense as defined by state law, not to the indictment). Even so, even if, assuming *arguendo*, the evidence was insufficient to find Diffuse Axonal Injury beyond a reasonable doubt, Roark's claim is without merit because the State did not allege in the indictment that Brook had suffered Diffuse Axonal Injury, only that Roark had caused Brook serious bodily injury by shaking. Tr 2.

As outlined above, there was testimony of three doctors that Brook's injuries were classic examples of Shaken Baby Syndrome. Roark points out that there was medical testimony disputing whether the injuries were the result of Shaken Baby Syndrome. Memo 48, citing 7 SF 164.

However, viewing the evidence in the light most favorable to the verdict, it appears the jury resolved any conflict of evidence, which it is the jury's responsibility to do, in favor of the doctors who testified that the injuries were those typical of Shaken Baby. *See Jackson*, 443 U.S. at 319. The jury made the reasonable inference that the injuries, having occurred while Brook was in Roark's sole care and being of the variety typically caused by violent shaking, were caused by Roark shaking Brook in some way. *See Id.*

Roark contends the State failed to provide any evidence that an object, as alleged in the indictment, was used in any way. Memo at 50. However, even if this raises a federal issue, which it does not, it is without merit, because it is clear that the grand jury could not allege with specificity how or with what Roark shook the child. Though there was testimony regarding shaking being the cause of the injuries, there was no evidence as to how or with what Roark shook the child. However, in order to shake the child, some object, whether it be human hands or anything else, must be used. Dr. Squires testified that the phrase "shaking her with an object," was nonsensical, but that something has to cause the baby to shake, and that the object or device used in the cases that she had read in the literature and that she had heard about was hands, but that she had not read of any cases where an external object was used. 5 SF 138-39. The jury made a reasonable inference that Roark shook Brook in some way and used something, some object, to do it.

Moreover, the court of appeals found that the evidence was sufficient to establish that Roark caused Brook's injuries by shaking her. *Roark v. State*, Slip op. at 8-9. To the extent, if any, that this Court finds Roark exhausted this claim in his PDR or in his state habeas application, the Court of Criminal Appeals denied such claim. Roark has not overcome with clear and convincing evidence the presumption of correctness to which the findings of the state courts are entitled. Nor has Roark demonstrated that the state courts' determination was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts based on the evidence in the record. This claim is utterly without merit and should be denied.

**E.      The evidence was legally sufficient to find that the child was struck with or against an object as alleged in the second paragraph.**

Roark claims that the evidence is legally insufficient to support a finding that Roark struck Brook with or against an object as alleged in the second paragraph of the indictment. Memo at 48-49. Roark contends there was contradictory expert testimony on this issue and the judge made a statement on this issue in denying directed verdict. Memo at 48-49. He again asserts his argument that the State failed to prove that Brook suffered from Diffuse Axonal Injury. Memo at 49. The Director addressed this argument in the section above. As argued in section I, above, Roark failed to exhaust this claim and it should be dismissed as procedurally defaulted. In the alternative, this claim is not cognizable or lacks merit and should be denied.

First, even assuming *arguendo* that evidence of impact were legally insufficient, Roark would not be entitled to relief, because the evidence is legally sufficient to support his conviction under the first paragraph alleging shaking, as argued above. Second, although Roark points to testimony that striking Brook alone would not have been sufficient to cause these injuries, the second paragraph alleging striking does not require the jury to find Roark only struck Brook with or against an object, without first shaking her. Further, although there is no direct evidence that Roark struck Brook with or against an object, because there were no marks of impact on her head, there was testimony that there were things she could have impacted against that would not leave a mark. 5 SF 113. Dr. Squires could not say for certain that Brook did not have an impact. 5 SF 113. To the extent, if any, that the jury determined that an impact was necessary to cause some part of the head injuries, the jury could have reasonably inferred that such impact occurred and was the cause of that injury. This claim is without merit and should be denied.

**IV. Roark's claim that he was denied effective assistance of counsel is without merit and should be denied. (Ground One)**

Roark claims that he was denied effective assistance of counsel when counsel failed to present evidence to raise a lesser included offense of reckless or negligent injury to a child or to request the lesser included offense, present evidence that vaccinations can cause the symptoms displayed by the

child, present character witnesses at the punishment phase, or use discovery obtained in the civil suit to cross-examine State's witnesses. Roark also alleges that his attorney inadequately cross-examined the State's witnesses, presented the defense's case, advised Roark of the dangers of trial, investigated the case, prepared Roark to testify; and that counsel was disorganized and unprepared for trial. Fed. Writ Pet. at 6, Memo at 15-34. However, he has failed to demonstrate that he is entitled to federal habeas relief on any of these claims, as discussed in detail below. He has failed to demonstrate that he was deprived of effective assistance of counsel or, more importantly, that the state courts' determination of his claims was contrary to or an unreasonable determination of clearly established federal law.

Ineffective assistance of counsel has two components: Roark must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland,* at 697.

The proper standard for determining whether counsel's performance was constitutionally adequate, is that of "reasonably effective assistance." *Strickland*, 466 U.S. at 687. Merely alleging counsel's performance was deficient is not enough; instead, Roark must show that counsel's performance fell beyond the bounds of prevailing, objective, professional standards. *Id.* at 688. In determining the merits of an alleged Sixth Amendment violation, courts "must be highly deferential" to counsel's conduct. *Id.* at 689. A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy," *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992), and every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689

Even if counsel is proven deficient, an ineffective assistance claim cannot be sustained without "strong proof of prejudice." *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002), *cert. denied*, 538 U.S. 1001 (2003). One may not simply allege, but must "affirmatively prove" prejudice.

25

*Strickland,* 466 U.S. at 693.  Roark pled not guilty.  Therefore, to be awarded relief on an ineffective assistance of counsel claim, he must demonstrate that, but for counsel's alleged deficiency, there is a reasonable probability that the outcome would have been different, or in other words, that the fact finder would have had a reasonable doubt as to his guilt.  *Strickland*, 466 U.S. at 695.

Roark raised these issues in his state habeas application and the state habeas court held a hearing and found Roark had "failed to present evidence showing that counsel was ineffective, despite testimony and affidavits merely critical of counsel's representation of Applicant at trial."  *Ex parte Roark*, vol 2 at 657 nos. 8, 9.  The Court of Criminal Appeals denied these claims on the trial court's findings.  *Ex parte Roark*, 2223127 at cover.  Roark has failed to present evidence in his federal petition to overcome the presumption of correctness to which the state courts' explicit and implicit findings are entitled. *Jackson v. Johnson,* 150 F.3d at 524.  Nor has he demonstrated that the state courts' determination is contrary to or an unreasonable application of clearly established federal law as announced by the Supreme Court or an unreasonable determination of the facts based on the evidence in the record.  Roark is not entitled to relief on any of his ineffective assistance claims and they should be denied.

## A.     Counsel was not ineffective for failing to present evidence to raise lesser included offenses of reckless or negligent injury to a child or to request the lesser included offense

Roark claims that counsel was ineffective for failing to present evidence to raise the lesser included offense of reckless or negligent injury to a child and for failing to request such lesser-included-offense instruction.  Memo 18-31.  However, this claim is without merit, and Roark has failed to meet his burden under the AEDPA to demonstrate that he is entitled to relief.  Therefore, this claim should be denied.  Roark provides the exact same brief in his federal petition that he provided to the state habeas courts on this issue.  *See Ex parte Roark*, Vol II of II at 536-624.  The

To be entitled to a lesser-included offense instruction, there must be some evidence that, if (1) proof of the charged offense includes proof of the lesser-included offense; and (2) some evidence

exists in the record that would permit a jury to rationally find that if the defendant was guilty, he was guilty only of the lesser included offense. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). As previously stated, a person commits the offense of injury to a child if he intentionally, knowingly, recklessly, or with criminal negligence causes serious bodily injury to a child, a person fourteen years of younger. Tex. Pen. Code 22.04(a)(1), (c)(1) (1994). Injury to a child is a result-oriented crime in which the conduct "is done with the required culpability to effect the result. . . . " *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985) (op. On reh'g). The evidence must show that the accused intended to cause the injury resulting from the accused's conduct. *See Navarro v. State*, 863 S.W.2d 191, 196 (Tex. App– Austin 1993, pet. Ref'd). Roark was charged with intentionally or knowingly injuring a child; to be entitled to a lesser-included offense charge, evidence in the record must have affirmatively raised the issue whether Roark recklessly or negligently injured Brook.

At trial, Roark denied that he had shaken or stricken Brook. 8 SF 89-92. A claim of recklessness or negligence could have undermined his claim that he did not cause the injuries at all. The jury's verdict reflects its rejection of Roark's credibility on this issue and its finding that Roark did cause the injuries with knowledge or intent. However, counsel's actions cannot be judged in hindsight. *Strickland*, 466 U.S. at 689.

On direct appeal, the court found no evidence was presented raising either lesser-included offense and counsel did not object to failure to give lesser-included instruction. *Roark v. State*, Slip Op. at 11-13. On state writ, Roark produced evidence he purports would have raised the lesser-included offenses, but such evidence would not have supported a finding that if Roark was guilty he was guilty only of the lesser-included offenses.

A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. Tex. Pen. Code Ann. § 6.03 (Vernon 1994). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would

27

exercise under all the circumstances as viewed from the actor's standpoint.  A person acts with criminal negligence with respect to the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the result will occur.  Tex. Pen. Code ann. § 6.03 (a)-(d) (Vernon 1994).  The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

On state writ, Roark produced  affidavits and testimony of Micki Roark, Roark's mother, Amy Van Pool, Roark's sister, and Debra Anderson, a former caseworker with the Texas Department of Protective and Regulatory Services.  *Ex parte Roark*, 2126041 at 26-28; Vol. II of II at 656.  Roark's sister, who had worked in the child care field for several years, stated that prior to 2000 the vast majority of people had no idea about the dangers of shaking a baby or child, and that Roark had never received any training or instruction on the dangers of shaking a child and that he did not have any knowledge that this could cause injury.  *Ex parte Roark*, 2126041 at 26.  Roark's mother, a registered nurse, stated that she had never received any training or instruction on the danger of shaking babies, and did not believe the average person, such as Roark, would have had this knowledge as he had never been instructed in or attended classes regarding the danger of shaking a baby and had no information that would have given him such knowledge.  *Id*. at 28.  These two affidavits are provided by relatives and are likely biased.  Anderson stated that based on her experience and training working with shaken baby cases that it is her opinion that the vast majority of people have no idea that shaking a baby can cause injury to the baby and that such opinion is supported by the publicity campaign waged in the last few years by various agencies and organizations.  *Ex parte Roark*, 2196693 at 7.

The evidence which Roark purports  supports a lesser-included offense, however, is evidence that neither Roark nor a vast majority of people were aware that shaking a baby could injure it.  This evidence could not support a finding that Roark knew that shaking a baby could injure it but acted recklessly by disregarding the risk.  Nor could this evidence support a finding that Roark ought to

28

have been aware of the risk, since the failure to perceive the risk would not be a gross deviation from the norm.

However, even if such evidence would have entitled Roark to a lesser-included offense instruction, counsel was not deficient for failing to introduce the evidence and seek such an instruction. Counsel testified during an evidentiary hearing held in response to Roark's state writ, that his failure to request an instruction was not trial strategy. EH 53-55, 63-64, 72-74. However, even if counsel's act was not trial strategy, it is not performance that fell beyond the bounds of prevailing, objective, professional standards. It was not an unreasonable for counsel to pursue a clearly negating defense when Roark unwaveringly asserted that he did not commit the offense and testified that he did not shake or strike Brook. 8 SF 89-92. While pursuing an alternative defense of recklessness or negligence was possible and other attorneys may have chosen that course, it cannot be said that the course he took deprived Roark of a fair trial with a reliable result. Even if possible, the alternative defense may have undermined his complete negative defense as in the old standby example: I didn't borrow it, but if I did, I didn't break it, but if I did, it wasn't my fault, but if it was, I'm sorry. Roark has not shown counsel was deficient.

Further, the state habeas court found that there was no newly presented evidence that if Roark was guilty he was guilty only of a lesser-included offense. *Id*. at nos. 6, 7. Therefore, although counsel testified that he should have developed the evidence to clearly raise a lesser-included offense, the petitioner has not shown that there was any such evidence for counsel to develop. If there was no such evidence, counsel was not deficient for failing to introduce it and Roark could not have been prejudiced by counsel's failure.

Nor can Roark demonstrate that he was prejudiced by counsel's failure to introduce evidence that he had never had any training to inform him that shaking a baby could cause severe bodily injury or that a vast majority of people did not know that shaking a baby could cause such injury. The jury found from the evidence that Roark intentionally or knowingly caused the injuries beyond a reasonable doubt. There is no reason to believe that the jury, having inferred intent or knowledge

29

from the evidence regarding the force involved in causing Brook's injuries which were severe on the scale of shaken baby injuries, would have resolved the evidence in favor of testimony that Roark did not know that shaking a baby with such force could cause injury.

Roark has failed to demonstrate that counsel was deficient or that he was prejudiced by counsel's failure to introduce such evidence and request a lesser-included offense instruction. Moreover, Roark has failed to overcome the presumption of correctness to which the state courts' findings are entitled by clear and convincing evidence. The state habeas court found that Roark had not presented any new evidence on state writ which defense counsel could be considered ineffective for not presenting to the jury. *Id.* Vol II of II at 656 no. 6. The court found, more specifically, that Roark presented no new evidence on state habeas to raise the issue of a lesser-included offense; no new evidence to raise the possibility that if guilty at all Roark was guilty only of recklessly or negligently injuring the child. *Ex parte Roark*, Vol. II of II at 657 no. 7. The state habeas court also found that evidence that other attorneys would have tried the case differently and criticism of trial counsel does not establish that counsel was ineffective. *Id.* at 657, nos. 8-9.

Roark has failed to demonstrate that the state courts' determination of this claim was contrary to or an unreasonable determination of clearly established federal law as announced by the Supreme Court or an unreasonable determination of the facts based on the evidence in the record. Therefore, this claim is without merit and should be denied.

**B.      Counsel was not ineffective for failing to present evidence that vaccinations can cause the symptoms displayed by the child, and such claim should be denied.**

Roark claims that counsel was ineffective for failing to present evidence of research showing a link between childhood vaccinations and symptoms that mirror those claimed to result from shaken baby syndrome, citing in general to the multitude of documents he attached to his petition. Memo 31-34. Roark provided the exact same briefing to the state courts on state writ. *Ex parte Roark*, Vol. II of II at 624-27. Roark does not cite specifically to any statement or conclusion in any of the articles attached to support his conclusion that such evidence would have been helpful to Roark's

defense.  His claim is thus improperly briefed and conclusory and must fail.  Additionally, Roark has failed to demonstrate that counsel was ineffective or that the state courts' determination of this claim was unreasonable.  This claim is without merit and should be denied.  Further, some of the articles which Roark attached to his petition are unexhausted and should not be considered, as argued in section I above.

At trial it was presented that the day of the incident Brook received routine vaccinations including one for chickenpox and one for measles, mumps, and rubella.  5 SF 121-22.  On state writ, Roark provided evidence that prior to trial, Roark's mother gave Roark's counsel research information he contends show a link between childhood vaccinations and symptoms that mirror those claimed to result from shaken baby syndrome.  EH 77.  Roark provided an affidavit from Dr. Bux, a defense witness at trial, that if he had been asked by counsel he would have testified that the vaccinations were a possible medical explanation for some of the child's symptoms.  *Ex parte Roark*, 2196693 at 621.  Counsel testified at the evidentiary hearing that he had the information prior to trial and that his failure to present it was not a matter of trial tactics.  EH 51-53.  But Roark has not demonstrated that counsel's actions fell below objective standards of reasonableness.  Roark provided several of these articles as exhibits in his state habeas application, and stated in his brief that the information was highly relevant, material and convincing evidence that established Roark's innocence in this case, but did not and does not attempt to cite which articles support this proposition, or any specific statements in any of the articles, or argue in what way it was highly relevant, convincing, or evidence of Roark's innocence.  Memo at 31; *Ex parte Roark*, Vol. II of II at 626.  Nor did Roark call any medical doctors as witnesses at the evidentiary hearing to explain the medical studies, or testify as to what symptoms the vaccinations could possibly have caused, how probable it was that they did,  or what other persuasive testimony could have been presented to the jury.

Moreover, Roark has not demonstrated that the medical theory he suggests would have been admissible under *Daubert,* which requires the trial court to make determinations with respect to

31

whether the evidence is both reliable and relevant including: whether the technique or theory has been subject to peer review and publication, the known or potential rate of error of the technique or theory when applied, the existence and maintenance of standards and controls, and whether the technique or theory has been generally accepted in the scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

A review of the articles provided reveals that counsel was not ineffective for failing to pursue a vaccination defense because the articles do not support a conclusion that the vaccinations Brook received caused Brook's injuries. The article "Shaken Baby Syndrome on Shaky Ground" does discuss vaccinations, but those mentioned are Hepatitus B, Polio, Hib, and three-in-one DPT vaccine for pertussis, diphtheria, and tetanus, which results in depletion of vitamin C reserves, leading to acute scurvy. Fed. Writ Pet. Tab A no. 11 at 6, 8. Brook did not receive any of these vaccinations the day her symptoms arose. 5 SF 121-22. Further, the article states these vaccinations can cause serious immunological, vascular, and metabolic injuries, of which scurvy is one. Fed. Writ Pet. Tab A no. 11 at 6, 8. Scurvy results in temporary bone fragility which may result in fractures due to normal handling. *Id*. at 8. Brook did not have any fractures, nor is there any indication she suffered from scurvy. The article also states that even non toxin-based vaccines like Hepatitis B can cause reactions seen in the SBS babies, particularly retinal hemorrhages. *Id*. at 7. However, evidence was already presented to the jury that there are a multitude of causes for retinal hemorrhages that do not involve shaking a baby. 7 SF 98, 101. There was also testimony distinguishing the little-broken-blood-vessel, flame-type retinal hemorrhages caused by infection and some other things from the big-globs-of-blood, trauma-type of hemorrhages observed in Brook. 5 SF 61-62. Moreover, this article was published in the Journal of the Australian College of Nutrition and Environmental Medicine, whose reputation and reliability has not been proven. Fed. Writ Pet. Tab A no. 11 at 1.

Another article Roark presented on state writ, "Shaken Baby Syndrome, The Vaccination Link," does discuss the measles-mumps-rubella vaccination that Brook received, but the symptoms described are not the ones Brook presented at the hospital. Fed. Writ Pet. Tab A no. 12 at 5, 6; 5 SF

121-22.  The symptoms described were signs of autism usually associated with bowel symptoms due to the disruption of the proper digestion breakdown in the bowels required for neuroregulation and brain development after receiving the vaccine.  Fed. Writ Pet. Tab A no. 12 at 5, 6.  In relation to other vaccinations not received by Brook on the relevant day, the article describes developing symptoms over time, none of which there is evidence Brook demonstrated: crying intensely and inconsolably, not feeding properly, vomiting, difficultly swallowing, becoming irritable, not sleeping, convulsing.  Fed. Writ Pet. Tab A no. 12 at 1, 2.  The article also says that the onset of reactions to the administration of vaccines is usually 24 hours or up to seven days, but that most reactions are delayed.  *Id.* at 4.  Brook's symptoms of injury appeared within six hours of receiving her vaccinations.  5 SF 121.  The article mentions brain swelling in relation to DPT vaccine.  Fed. Writ Pet. Tab A no. 12 at 1, 2.   But Brook did not receive this vaccine on the relevant day.  5 SF 121-22.  The article also says that bruising and easy bleeding is one characteristic of the blood clotting disorder recognized as a side-effect of many vaccines that can result in brain and other hemorrhages.  Fed. Writ Pet. Tab A no. 12 at 1, 2.  But testimony at trial established that a clotting test was done and Brook's blood was clotting normally.  7 SF 98, 101.  Furthermore, this article was published on the Eagle Foundation website as an excerpt from Nexus Magazine and there is no evidence as to the reputation and reliability of either source.  Fed. Writ Pet. Tab A no. 12 at 1, 2.

Yet another article Roark provided on state writ, "Shaken Baby Syndrome and Non-accidental Injuries,"  mentions vaccinations, especially those containing thimerosal.  Fed. Writ Pet. Tab A no. 4 at 2.  There is no evidence as to whether the vaccines given to Brook contain this mercury preservative.  The article again describes a temporal relationship with the vaccines and crying immediately following vaccination and the subsequent acetaminophen and antibiotic to control the crying in the following days.  *Id*. at 2-3.  Brook's pediatrician who administered the vaccinations, however, described Brook not as crying immediately after the shot, but as friendly, kissing the staff on the way out the door.  5 SF 121.  Moreover, it is unknown what in what source this extract was published, if at all, or the reputation and reliability of that source.

Again, even if counsel's failure to present this evidence was not a strategic decision, Roark has failed to demonstrate that it fell below the bounds of prevailing, objective, professional standards. Roark argues that counsel failed to provide any evidence of the possible similar effects of vaccinations when counsel's entire defense rested on pointing to another cause for the injuries, yet counsel did provide the jury with an alternative explanation for the injury, the spontaneous rebleed of a prior injury which could not be attributed to Roark with any certainly because it could not be shown that he was the only one present with Brook when it occurred.  Furthermore, because Dr. Bux stated only that the vaccinations could have been a possible explanation for some of her symptoms, without indicating which symptoms, how probable an explanation the vaccines might be, or on what that conclusion is based, Roark has not demonstrated that counsel was deficient for failing to pursue this line of evidence in addition to or instead of the rebleeding theory.

For the same reason, Roark has failed to demonstrate that he was prejudiced by counsel's failure to introduce the evidence.  If the vaccinations could only be said to be a possible explanation for some of Brook's symptoms, there is not a reasonable likelihood that the outcome of the trial would have been different.  Roark has not demonstrated prejudice.

In addition to not demonstrating that counsel was ineffective, Roark has failed to overcome with clear and convincing evidence the presumption of correctness to which the state courts' findings are entitled.  The state habeas court's findings included that Roark had not presented new evidence which defense counsel could be considered ineffective for not presenting to the jury.  *Ex parte Roark*, Vol. II of II at 656 no. 6.  The Court of Criminal Appeals denied Roark's claim based on the trial court's findings.  *Ex parte Roark*, 2223127 at cover.  Roark has failed to demonstrate that the state courts' determination of his claim was contrary to or an unreasonable application of clearly established federal law as announced by the Supreme Court or an unreasonable application of the facts based on the evidence in the record.  Therefore, this claim must fail.

**C.    Roark's remaining claims of ineffective assistance of counsel are conclusory; therefore, they should be summarily denied. (Ground One, C-J)**

Roark lists a number of additional ineffective-assistance claims in his federal petition. Counsel failed to present character witnesses at the punishment phase, use discovery obtained in the civil suit to cross-examine State's witnesses; and inadequately cross-examined the State's witnesses, presented the defense case, advised Roark of the dangers of trial, investigated the case, prepared Roark to testify; and was disorganized and unprepared for trial. Fed. Writ Pet. at 6. The only briefing provided for these claims is that they were developed in the hearing in state court and Roark relies on that hearing transcript in support of those arguments. Memo at 34. He provides no argument or citation to the record or to the ninety-nine page evidentiary hearing transcript to support such claims.

This is essentially the same argument, or lack thereof, Roark provided to the state habeas court for these claims. *Ex parte Roark*, 2126041 at 7. In his state writ application, in lieu of briefing the claims, he referred to four affidavits that he attached, only two of which arguably refer to these additional grounds. *Id*. In post-hearing briefing, he provided argument only on the two ineffective-assistance claims addressed above. *Ex parte Roark*, Vol. II of II at 596-628. In that brief, counsel stated that he continues to urge the remainder of his grounds and arguments and relies on previous filings and submissions and evidence on those grounds. *Id*. at 596. But the Director can find no previous briefing filed regarding those grounds in the state writ files.

Though *pro se* petitions are entitled to a liberal construction, this is not a *pro se* petition. By failing to brief the issues, counsel has presented merely conclusory allegations that do not raise constitutional issues in habeas proceedings. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Further, because he failed to brief his claim in the state courts, the state courts' determination to deny such claims was not unreasonable. By failing to brief his claims in his federal petition , Roark has failed to demonstrate that he was denied effective assistance of counsel under these claims, failed to overcome the presumption of correctness to which the state courts' findings are entitled by any, much less clear and convincing evidence, and failed to demonstrate that the state courts'

determination of such claims was unreasonable as is required in order to be entitled to federal habeas relief under the AEDPA. *See* 28 U.S.C. §§ 2254(d), (e)(1); *Jackson v. Johnson,* 150 F.3d 520, 524 (5th Cir. 1998). Therefore, these claims must be denied.

Roark presented these additional ineffective-assistance claims to the state courts. The trial court entered findings regarding these claims: Roark had not presented new evidence which counsel could be considered ineffective for not presenting to the jury; the fact that other attorneys would have tried the case differently does not make counsel ineffective; Roark failed to present evidence showing his counsel at trial was ineffective, despite testimony and affidavits merely critical of counsel's representation at trial. *Ex parte Roark*, Vol. II of II at 656-57 nos. 6, 8-9. The judge who entered the findings on state habeas was the same judge who presided over Roark's trial and witnessed trial counsel's performance first hand. *Ex parte Roark*, Vol. II of II at 658; Tr 148. The state courts' findings are entitled to a presumption of correctness which Roark has failed to overcome with any, much less clear and convincing evidence.

A review of the record on state writ confirms that the state courts' determination of these claims was not an unreasonable application of federal law or an unreasonable determination of the facts. Regarding Ground 1C, Roark did not present the testimony or affidavit of any potential witness demonstrating that anyone would have been willing and able to testify as a character witness at punishment and to what that person would have testified. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Punishment was not even discussed at the evidentiary hearing, therefore, he failed to demonstrate a failure to introduce witnesses at punishment. Regarding Ground 1H, Roark failed to allege or demonstrate what counsel failed to discover or how it would have altered the outcome of the case, although he claims that counsel was ineffective for failing to investigate the case. Regarding Ground 1G, Roark did counsel provide any evidence of his claim that counsel inadequately advised Roark of the dangers of trial and advantages of plea negotiations. Although Roark testified at the evidentiary hearing, he was never asked about counsel's advice regarding plea

negotiations, only about whether he knew shaking a baby could cause severe bodily injury. EH 82-88.

Regarding counsel's failure to adequately cross-examine State's witnesses, Ground 1D, the extent of the evidence presented on state writ was that counsel did not have notes written on his legal pad while cross-examining Dr. Squires, that his line of questioning appeared disorganized and rambling, and that counsel did not reveal the doctor's predisposition to conclude shaken baby syndrome from any set of symptoms presented. EH 15, 17, 23, 25, 30-31. The record, however, reflects that counsel went to great lengths to establish Dr. Squires's predisposition to assess child abuse, by pointing out her opinion that the old blood was most likely from baby shaking when she had no history whatsoever regarding the old blood, and that she concludes it may be child abuse whenever the history is not sufficient to explain the injury. 5 SF143-146, 155, 164. However, Roark has not introduced any evidence that Dr. Squires had such a predisposition to further expose through cross-examination.

Regarding counsel's failure to use discovery obtained in the civil suit to cross-examine the State's witnesses, Ground 1E, Aris testified that counsel did not appear to use the cross-examination of the state's expert during a deposition in the civil suit. EH 14-15. The deposition was not introduced into evidence on state writ, nor was any specific information from the deposition discussed to show how such use would have altered the outcome of the trial. Further, the record reflects that counsel did use Dr. Squires's deposition in his cross-examination. 4 SF 215; 5 SF 147. Moreover, counsel testified that he considered the information that was provided to him and chose not to use it all. EH 69-70. This indicates a strategy determination which is entitled to great deference.

Regarding counsel's failure to present the defense case, Ground 1 F and J, to the extent it is not repetitious of Roark's previous claim addressed above regarding failure to present evidence that vaccinations can have similar effects, only generalized statements were made that counsel appeared disorganized, unprepared, and failed to object to unspecified prosecutorial argument. EH 14-15, 22-

37

23, 29, 31.  These are generalized criticisms, they fail to point to any particular act of counsel or demonstrate that such act fell below objectively reasonable standards of professional conduct, fail to allege what specifically counsel should have done differently, and fail to demonstrate that the outcome of the trial would have been different.

Regarding counsel's failure to adequately prepare Roark for his testimony, Ground 1I, counsel met with Roark maybe ten times before trial and for over an hour the day before trial.  EH 29, 87.  Moreover, there was no allegation as to what counsel should have done differently to prepare Roark to testify or how such additional preparation would have altered his testimony or altered the outcome of the case.

None of the testimony or evidence in the state habeas file constitutes clear and convincing evidence that counsel was ineffective or that the state court's determination of Roark's claims was unreasonable.  Again, these claims are conclusory and without merit and should be denied.

## V.  Roark's claim of actual innocence is not cognizable on federal writ of habeas corpus and should be denied.  (Ground Two and Four)

Roark claims that new evidence and newly discovered evidence shows that Roark is actually innocent.  Fed. Writ Pet. at 8, 11; Brief at 34-39.  He contends that basic principles of due process under the Fifth and Fourteenth amendments and *Herrera* require Roark's conviction be set aside due to new scientific evidence that refutes the shaking only theory behind shaken baby syndrome.  Memo 34.  Actual innocence, however, is not cognizable as a ground for relief on federal habeas corpus, especially where the state has provided a procedure for reviewing such claims.  *Herrera v. Collins*, 506 U.S. 390 (1993); *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (Even if actual innocence claim could be basis for federal relief, only cognizable if there was no state procedure available for making the claim).  Texas habeas law recognizes claims of actual innocence.  *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1997).  Roark's substantive innocence claim was reviewed and denied on state habeas on the findings of the trial court after a hearing.  *Ex parte Roark*, 2126041 at 7-8, 2223127 at cover.  The trial court found that Roark's proof did not rise to

38

the level of proof required to show actual innocence. *Ex parte Roark*, Vol. II of II at 565 no. 3. This claim, therefore, should be denied.

The Director also contends that Roark has failed to demonstrate a truly persuasive showing of actual, as in factual, innocence, and his claim is thus without merit. The type of evidence which Roark presents does not demonstrate a factual impossibility of Roark committing the offense for which he was convicted, nor is it evidence on which it is more likely than not that no reasonable juror could find guilt beyond a reasonable doubt. *See Schlup v. Delo*, 513 U.S. 327, 329 (1995). Roark's argument that evidence that shaking alone could not have produced Brook's injuries was developed at trial and the jury's general verdict does not demonstrate a finding by the jury that Roark did not cause the injury by shaking and impacting Brook's head.

Moreover, Roark has not overcome the presumption of correctness to which the state courts' findings are entitled by clear and convincing evidence. Roark has failed to demonstrate that the state courts' denial of his actual innocence claim is contrary or an unreasonable application of clearly established federal law as announced by the Supreme Court or an unreasonable determination of the facts based on the evidence in the record. Because no relief is available on this claim on federal habeas review and it is without merit, this claim should be denied.

## CONCLUSION

For the foregoing reasons, the Director respectfully requests that the Court deny Roark's petition for writ of habeas corpus, and *sua sponte* deny a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division


s/ Marta R. McLaughlin
MARTA R. MCLAUGHLIN*
Assistant Attorney General
State Bar No. 24032846

*Attorney in Charge

P.O. Box 12548, Capitol Station
Austin, Texas   78711
(512) 936-1400
Facsimile No. (512) 936-1280
Marta.McLaughlin@oag.state.tx.us

ATTORNEYS FOR RESPONDENT


## CERTIFICATE OF INTERESTED PERSONS

I, Marta R. McLaughlin, do hereby certify, pursuant to Local Rule 3.1(f) of the Northern District of Texas that other than the Director and Petitioner, counsel for Respondent is unaware of any person with a financial interest in the outcome of this case.


s/ Marta R. McLaughlin
MARTA R. MCLAUGHLIN
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, Marta R. McLaughlin, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing Respondent Quarterman's Answer with Brief in Support has been served by placing same in the United States mail, postage prepaid, on this the 11th day of September 2006, addressed to Roark's counsel:

Gary A. Udashen
Attorney at Law
2301 Cedar Springs Rd., Ste. 400
Dallas, Texas 75201

/s/ Marta R. McLaughlin
MARTA R. MCLAUGHLIN
Assistant Attorney General

41