NO. WR, 56-380-01
WRIT NO. W99-02290-I(A)

| | | |
|---|---|---|
| EX PARTE | § | IN THE COURT OF CRIMINAL |
| | § | |
| | § | APPEALS FOR THE |
| | § | |
| ANDREW WAYNE ROARK | § | STATE OF TEXAS |

## APPLICANT'S REQUEST FOR THE COURT
## TO RECONSIDER CASE ON ITS OWN MOTION

**TO THE HONORABLE JUDGES OF SAID COURT:**

**NOW COMES** Applicant, ANDREW WAYNE ROARK, and submits this request that the Court reconsider this case on its own motion and would show the following:

I.

On January 25, 2006, the Court denied the relief requested in this Application for Writ of Habeas Corpus.

II.

On January 23, 2006, by express mail, Applicant sent to the Court the document attached to this request entitled, "Supplemental Material In Support of Request For Remand for Consideration of New Evidence." It appears that this material was not before the Court at the time the decision was rendered. This material is highly significant. Applicant requests that the Court review this material, in conjunction with everything else submitted in this case, in order to determine whether the Court should reconsider this case on its own motion.

WHEREFORE, PREMISES CONSIDERED, Applicant submits this request.

Respectfully submitted,

*[signature]*

GARY A. UDASHEN
Bar Card No. 20369590

SORRELS & UDASHEN
2301 Cedar Springs Road
Suite 400
Dallas, Texas 75201
214-468-8100
214-468-8104 fax

Attorney for Applicant

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of Applicant's Request to the Court to Reconsider Case On Its Own Motion was delivered to the District Attorney's Office, 133 N. Industrial Blvd., Dallas, Texas 75207, on this the ___ day of February, 2006.

*[signature]*

GARY A. UDASHEN

NO. WR, 56-380-01
WRIT NO. W99-02290-1(A)

| | | |
|---|---|---|
| EX PARTE | § | IN THE COURT OF CRIMINAL |
| | § | |
| | § | APPEALS FOR THE |
| | § | |
| ANDREW WAYNE ROARK | § | STATE OF TEXAS |

SUPPLEMENTAL MATERIAL IN SUPPORT OF
REQUEST FOR REMAND FOR
<u>CONSIDERATION OF NEW EVIDENCE</u>

TO THE HONORABLE JUDGES OF SAID COURT:

**NOW COMES** Applicant, ANDREW WAYNE ROARK, and submits this supplemental material in support of request for consideration of new evidence and would show the following:

I.

The evidence in Mr. Roark's case showed that the child had old blood and new blood on her brain that was revealed in a review of her catscan. However, the state's doctors and the prosecutors trying the case took the position that this was not significant, did not undermine the shaken baby theory and did not mean that the injury did not necessarily occur during the limited time period that Mr. Roark was the sole caretaker for the child. However, in the recent motion for new trial hearing in *State of Texas v. Maria Isabel Hurtado*, No. F04-49745-L in the Criminal District Court No. 5 of Dallas County, Texas, the state's expert doctor took a different position. The Hurtado case was a similar "shaken baby" case.

In the Hurtado case, there was a dispute between two radiologists as to whether the child's catscan showed both old blood and new blood. The state's position, expressed through their witnesses and argument, was that there was only new blood. During the motion for new trial testimony of Dr. Matthew Cox, the state's expert witness, a different position was taken. Dr. Cox admitted that the presence of old blood would, in theory, mean that the state's argument that the injury to the child in the Hurtado case was caused by shaking was incorrect. (See attached record excerpts from Hurtado). The facts in Hurtado and those in the Roark case are the same, an allegation of injury to a child under the Shaken Baby Syndrome theory. Dr. Cox's testimony is important because he is currently the Director of the Referral and Evaluation of At Risk Children Program at Children's Medical Center. This is the primary program in Dallas County dealing with medical child abuse cases. (See attached record excerpts from Hurtado trial). Dr. Cox was the state's primary expert at the Hurtado trial. The position he now holds was previously held by Dr. Janet Squires who was the state's primary expert in the Roark trial. (See RR 5, p. 45, Roark trial record). The fact that Dr. Cox is giving testimony that could have undermined the state's case in the Roark trial is highly significant based on his position.

II.

As stated in previous filings in this case, the area of "Shaken Baby Syndrome" is constantly evolving. New scientific studies are adding to the scientific understanding of this very complex question and raising new questions concerning the validity of this theory of

prosecution. Based upon this new information, Mr. Roark requests the court to remand this case back to the trial court for further evidence gathering. This is necessary in order to ensure that justice is served.

                                              Respectfully submitted,

GARY A. UDASHEN
Bar Card No. 20369590

SORRELS & UDASHEN
2301 Cedar Springs Road
Suite 400
Dallas, Texas 75201
214-468-8100
214-468-8104 fax

Attorney for Applicant

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of Supplemental Material in Support of Request for Remand for Consideration of New Evidence was mailed to the District Attorney's Office, 133 N. Industrial Blvd., Dallas, Texas 75207, on this the 23rd day of January, 2006.

GARY A. UDASHEN

```
 1                IN THE CRIMINAL DISTRICT COURT NUMBER 5

 2                     OF DALLAS COUNTY, TEXAS

 3   THE STATE OF TEXAS          *

 4   vs.                         *    CAUSE NO. F04-49745-L

 5   MARIA ISABEL HURTADO        *

 6

 7   - - - - - - - - - - - - - - - - - - - - - - - - - -

 8

 9                      TRIAL on the MERITS

10              Volume____3____of____5____Volume(s)

11

12   - - - - - - - - - - - - - - - - - - - - - - - - - -

13

14

15

16

17

18      BE IT REMEMBERED THAT on this the 30th day of

19   September, A.D, 2005, the above-styled and -numbered

20   cause(s) came on for hearing before the Honorable Manny

21   Alvarez, Judge Presiding, with a jury, in the Criminal

22   District Court Number 5 of Dallas County, State of Texas,

23   and the following is a true and correct transcription of the

24   proceedings had, to-wit:

25      (Proceedings Reported by Computerized Machine Shorthand)
```

*Victoria Franklin, Official Court Reporter*
214 653 5943

Sptember 30, 2005 - Volume 3

1  that's a very good animation, personally.

2             THE COURT: Okay. Give me a minute.

3             (Brief pause in proceedings.)

4             THE COURT: Okay. Let's bring 'em in.

5             THE BAILIFF: All rise, please.

6             (Members of the Jury enter the courtroom.)

7             THE COURT: Be seated, please.

8             Ladies and Gentlemen of the Jury, this

9  witness has been sworn.

10            You may proceed.

11                  MATTHEW COX, M.D.,

12 the witness hereinbefore named, having been duly sworn by

13 the Court, testifies under oath as follows:

14                DIRECT EXAMINATION - CONTINUED

15 BY  MS. PEIRCE:

16     Q.   Dr. Cox, will you please state your full name for

17 the record.

18     A.   Doctor Matthew Cox.  C-o-x (spelling).

19     Q.   And did you begin your testimony yesterday?

20     A.   Briefly, yes.

21     Q.   Do you understand, you're still under oath?

22     A.   Yes.

23     Q.   I'm not exactly sure where we left off, so let me

24 start over again. What is your position that you hold

25 currently?

*Victoria Franklin, Official Court Reporter*
*214.653.5943*

        A.    I'm employed at the University of Texas
Southwestern Medical School.   I work primarily at Children's
Medical Center Dallas.

        My main obligation or role at Children's Medical Center
is I'm co-director of the Reach Program, which is the
referral and evaluation of at-risk children.

        We see children both in the hospital, as well as the
clinic, when there are concerns of physical or sexual abuse
or neglect, and provide a medical evaluation.

        I'm also a general pediatrician, seeing kids in the
hospital, when they're hospitalized, for a variety of
illnesses, about 20, 25 percent of my time.

        Q.    Do you have a particular specialty?

        A.    I am, first and foremost, a general pediatrician.
But I also have added training and expertise in the area of
child abuse and neglect evaluations, having done additional
training for two years at Children's Hospital Philadelphia
in that area.

        Q.    Is that a recognized specialty, like, neurology or
pediatrics, those types?

        A.    It's a new area of focus in pediatric medicine.
So it's not officially recognized as a true subspecialty of
pediatrics at this time.   But, in the near future, it will
be.

        Q.    Who actually would have to make it a specialty?

September 30, 2005

1  THE STATE of TEXAS  )

2  COUNTY of DALLAS    )

3      I, VICTORIA FRANKLIN, Official Court Reporter in and

4  for Criminal District Court Number 5 of Dallas County, State

5  of Texas, do hereby certify that the following exhibits

6  constitute true and complete duplicates of the original

7  exhibits, excluding physical evidence, offered into evidence

8  during the proceedings in the above-entitled and -numbered

9  cause(s), as set out herein before the Honorable Manny

10 Alvarez, Judge of Criminal District Court Number 5 of Dallas

11 County, State of Texas, and the proceedings beginning

12 September 30, 2005.

13     I further certify that the total cost for the

14 preparation of this Reporter's Record is $ _835.00_ and was

15 paid/will be paid by Dallas County.

16     WITNESS MY OFFICIAL HAND this the _8th_ day of

17 _November_, A.D., 2005.

18

19                                VICTORIA FRANKLIN, CSR #2307
20                                Official Court Reporter
                                  VICTORIA FRANKLIN
                                  Notary Public
21                                State of Texas      133 N. Industrial Blvd., LB-42
                                  My Commission Expires  Dallas County, Texas  75207
                                  May 8, 2008       Office:  214-653-5943
22                                                  Fax:     214-761-1388

23                                My License Expires:   12-31-05
                                  Commission Expires:  05-08-06
24

25                      * * * * *

*Victoria Franklin, Official Court Reporter*
*214.653.5943*

```
 1                    REPORTER'S RECORD
                       VOLUME 1 of 1
 2           TRIAL COURT CAUSE NO. F04-49745-L

 3   THE STATE OF TEXAS          |   CRIMINAL DISTRICT
                                 |
 4   VS.                         |   COURT NUMBER FIVE
                                 |
 5   MARIA ISABEL HURTADO        |   DALLAS COUNTY, TEXAS

 6

 7

 8                                       ORIGINAL

 9

10

11                      _____

12                  MOTION FOR NEW TRIAL

13                      _____

14

15

16

17

18

19

20          On the 19th day of December 2005, the following

21   proceedings came on for hearing in the above-entitled and

22   numbered cause before the Honorable Pat Priest, sitting

23   for the Honorable John Ovard held in Dallas, Dallas

24   County, Texas:

25          Proceedings reported by oral stenography.
```

JACQUELINE GALINDO, CSR
817-996-5433

1          MS. HOGUE:  The State will call Dr. Cox.

2          THE COURT:  Sir, please have a seat and
3  then raise your right hand.

4          [Witness sworn.]

5          THE COURT:  The Rule has been invoked,
6  sir.  And that simply means you can't be in the courtroom
7  when another witness testifies, nor discuss your own
8  testimony with anyone other than the lawyers until the
9  hearing is concluded.

10         You may proceed.

11         MATTHEW COX, M.D.,
12  having been first duly sworn, testified as follows:

13                    DIRECT EXAMINATION
14  BY MS. HOGUE:

15     Q.   Sir, will you please state your full name?

16     A.   Dr. Matthew Cox.

17     Q.   And, Dr. Cox, are you the same Matthew Cox that
18  testified both before the judge in a hearing outside the
19  presence of the jury, as well as in front of the jury, in
20  *The State versus Maria Isabel Hurtado* that was tried back
21  in September of 2005?

22     A.   Yes.

23     Q.   And are your qualifications and your
24  credentials the same as they were back then?

25     A.   Yes.

1  records as he documented it. So, I don't think that
2  would have changed anything.
3      Q.  Well, would it have been helpful in the sense
4  of being thorough to speak to that doctor?
5      A.  I don't think, in this case, I would have. I
6  don't agree with that.
7      Q.  Okay. Now, Dr. Uscinski apparently agrees with
8  the doctors at Baylor, correct?
9      A.  That's my understanding, yes.
10     Q.  And I think, if I understand you correctly,
11 that you said the most important question really is
12 whether or not there was prior bleeding based upon the --
13 And that's the difference between the doctors' view of
14 these radiology readings; is that correct?
15     A.  It is an important question, yes.
16     Q.  And if, in fact, the doctors from Baylor were
17 correct, --
18     A.  Uh-huh.
19     Q.  -- and Dr. Uscinski is correct, then the theory
20 that you have proposed as to what caused the injury to
21 this child would be incorrect.
22     A.  In theory, yes.
23     Q.  Okay. So, you would agree that if Dr. Uscinski
24 came into court and he gave testimony as is in his
25 affidavit and he pointed to the Baylor Hospital record

1  and said, "These doctors were correct," and if the jury
2  believed that, then they would have rejected your theory.
3      A.  I imagine so, yes.
4          MS. HOGUE:  And I object.  Calls for
5  speculation.
6          THE COURT:  Overruled.
7      Q.  [By Mr. G. Udashen]  Now, so, the age of the
8  injuries is the most important question in determining
9  the shaken baby analysis.
10     A.  Most important, I don't know, but it's one of
11 the questions I always ask, yes.
12     Q.  Now, you are aware, I'm sure, from your work in
13 this field that Dr. Uscinski is certainly not the only
14 expert in the country or, in fact, in the world that
15 would disagree with your analysis of these types of
16 cases.
17     A.  I am well-aware of that, yes.
18     Q.  And you are not here to tell us that the
19 doctors who disagree with you are not qualified doctors
20 to express an opinion.
21     A.  I can't tell you that, no.
22     Q.  And because, just as you have your opinion
23 based upon your expertise, they have their opinion based
24 upon their expertise.
25     A.  Absolutely.

```
1   THE STATE OF TEXAS          X

2   COUNTY OF DALLAS            X

3

4              I, Jacqueline Galindo, Deputy Official

5   Court Reporter for the Criminal District Court Number

6   Five, Dallas County, Texas, do hereby certify that the

7   above and foregoing contains a true and correct

8   transcription of all portions of evidence and other

9   proceedings requested in writing by counsel for the

10  parties to be included in this requested excerpt in the

11  above styled and numbered cause, all of which occurred in

12  open court or in chambers and were reported by me.

13             I further certify that this Reporter's

14  Record of the proceedings truly and correctly reflects

15  the exhibits, if any, offered by the respective parties.

16             WITNESS MY OFFICIAL HAND, this the 31st

17  day of December, 2005.

18

19             Jacqueline Galindo, Texas CSR #7023
               Expiration Date: 12/31/05
20             Deputy Official Court Reporter
               Dallas County, Texas
21             Crowley Courts Building
               Dallas, Texas
22             (817) 996-5433

23

24

25
```